UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP A. HUFFMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 4:23-CV-00446 ACL |
| | ) | |
| RICHARD ADAMS | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Phillip A. Huffman for a Writ of Habeas

Corpus under 28 U.S.C. §2254.

## I.  Procedural History

Huffman is currently incarcerated at the Eastern Reception Diagnostic and Correctional

Center in Bonne Terre, Missouri, pursuant to the sentence and judgment of the Circuit Court of St.

Louis County, Missouri.  (Doc. 12-2 at 83-85.)

After a jury trial, Huffman was found guilty of first-degree murder and armed criminal

action, and the court sentenced him to concurrent terms of life imprisonment without parole and

twenty years' imprisonment in the Missouri Department of Corrections.  *Id.* at 69–72.

In his direct appeal, Huffman argued that the trial court abused its discretion in sustaining

the State's objection and refusing to admit into evidence testimony that Huffman was taking

medication that made him calm at the time of trial.  (Doc. 12-3 at 8.)  On September 24, 2019, the

Missouri Court of Appeals affirmed Huffman's convictions.  (Doc. 12-5.)

Huffman filed a *pro se* motion for post-conviction relief under Rule 29.15.  (Doc. 12-6 at

1

2.)  Following an appearance from counsel, an amended post-conviction relief motion was filed. *Id.*  In his amended motion, Huffman raised the following ineffective assistance of counsel claims: (1) trial counsel failed to call family members Darrell Huffman, Linda Huffman, and Jada Huffman during sentencing to testify about Huffman's troubled childhood; (2) trial counsel failed to object to various leading questions asked by the prosecution during trial; and (3) trial counsel failed to object to statements made by the prosecutor during voir dire that misstated the concept of deliberation.  *Id.* at 2-3.  The court denied this motion following an evidentiary hearing.  *Id.* at 3-6.

In his appeal from the denial of post-conviction relief, Huffman argued that trial counsel was ineffective in failing to call Darrell Huffman and Linda Huffman; and in failing to object during voir dire when the prosecutor misstated the concept of deliberation.  (Doc. 12-8.)  On October 11, 2022, the Missouri Court of Appeals affirmed the decision of the motion court.  (Doc. 12-10.)

Huffman filed the instant Petition on April 10, 2023, in which he raises the following grounds for relief: (1) the trial court erred in refusing to allow him to testify that he was taking medication that made him calm at the time of trial; (2) he received ineffective assistance of counsel when trial counsel failed to call witness on his behalf at the penalty phase; (3) he received ineffective assistance of counsel when trial counsel did not object to leading questions by the prosecutor; (4) he received ineffective assistance of counsel when counsel did not object to the prosecutor's questions regarding deliberation during voir dire; (5) trial counsel was ineffective for failing to call his brother, Darrell Huffman, to testify at sentencing; (6) trial counsel was ineffective for failing to call his aunt, Linda Huffman, to testify at sentencing; and (7) trial counsel was ineffective for failing to object to the prosecutor's questions regarding deliberation during voir

dire.  (Doc. 1-1.)

## II.  Facts[1]

The State charged Huffman with one count of murder in the first degree and one count of armed criminal action stemming from an incident in 2012 during which he fatally stabbed his girlfriend, Tempestt Hill (Victim).  Huffman conceded at trial that he stabbed Victim causing her death.  His theory of defense was that he did not knowingly cause her death after deliberation, but rather that he acted with sudden passion and adequate cause and thus was guilty of voluntary manslaughter, not first- or second-degree murder.  The following evidence was adduced at the 2018 trial, viewed in the light most favorable to the verdict.

Huffman testified to the following in his own defense.  At the time of Victim's death, Victim and Huffman had been in a relationship for over four years.  On December 25, 2012, after returning home from celebrating the holidays and the recent birth of their child, Victim left the apartment for a few hours.  When she returned, Victim and Huffman engaged in sexual intercourse.  The next day Huffman found Victim distraught, clutching a kitchen knife, and wanting to end her life.  Victim informed Huffman she had been engaging in prostitution for the duration of their relationship and that she had had sexual intercourse with another man when she was away the previous night.  Victim also stated the man she had sex with the previous night was HIV-positive, the condom they were using had broken, and she had transmitted HIV to Huffman. Huffman testified that he took the knife from Victim but then blacked out and did not remember anything between taking the knife and arriving at the police station.  He did not deny stabbing Victim or calling 911 but stated he "lost control" due to his belief he had been exposed to HIV.

---

[1] The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals affirming the decision of the motion court. (Doc. 12-5 at 2-3.)

In the recording of one of three 911 calls Huffman repeated, "I killed my girlfriend because she gave me a disease," "I killed my girlfriend right now because she gave me a disease that I can never take back."

Huffman was arrested on December 26, 2012, at his apartment.  The State's medical examiner testified to 188 incise and stab wounds to Victim's body.  The police officers who responded to the dispatch call and who transported Huffman to the police station testified Huffman was cooperative and repeatedly stated "I killed her.  She gave me AIDS."  Due to the allegations of HIV, both Victim and Huffman were given blood tests—neither tested positive for HIV.

Before the defense presented its case, the State asked for a ruling on the record on whether Huffman was allowed to testify to his current medication and its effect on his demeanor. The trial court excluded Huffman's testimony on this issue.  The jury was instructed on first degree murder, second-degree murder, and voluntary manslaughter, along with the associated armed criminal action ("ACA") charges.  The jury found Huffman guilty of first-degree murder and ACA.  The trial court sentenced him to life in prison without parole on the murder charge and to a concurrent sentence of twenty years in the Missouri Department of Corrections on the ACA charge.

### III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court construed § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV.  Petitioner's Claims

#### 1.  Ground One

In Huffman's first ground for relief, he argues that the trial court erred in preventing him from testifying that the medication he was taking at the time of the trial was to help keep him "calm and mellow." (Doc. 1-1 at 11.)  Huffman argues that the exclusion of this evidence affected the jury's evaluation of his "credibility regarding his mental state, making it more likely that they would convict him of a higher offense." *Id.*

5

It has been emphasized by the United States Supreme Court that, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions, such as the admissibility of evidence at trial." *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, when conducting a habeas review, a federal court is limited in determining whether "a conviction has violated the Constitution, laws, or treaties of the United States." *Id.* at 68. However, an evidentiary issue may form the basis for habeas relief if the error "constitutes an independent constitutional violation." *Bounds v. Delo*, 151 F.3d 1116, 1119 (8th Cir. 1998). Moreover, a state court's evidentiary ruling only forms this basis under the due process clause when the rulings were "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Id.* In order to make this showing, the petitioner must show a reasonable probability that the evidentiary error had an effect on the trial outcome. *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996).

Huffman raised this claim in his direct appeal. The Missouri Court of Appeals summarized the relevant facts regarding the excluded testimony as follows:

> Before Huffman took the stand to testify in his defense, the State asked the trial court to clarify its previous off-record ruling regarding the admissibility of Huffman's testimony about how his current medication affects him. The State objected to this testimony primarily on the grounds that, "by testifying that he takes medication that alters his mood or mental state translated into demeanor, [it] is making an issue of his mental state which has not been properly noticed up and leaves unanswered questions for the jurors to speculate on." Further, the State argued that Huffman's assertion his current medication caused his flat affect would be speculative because there was no way to tell whether his affect was in fact influenced by his medication. The trial court ultimately concluded that "the prejudicial effect for that testimony is greater than the probative value" and excluded the testimony.
>
> After Huffman finished his testimony and the jury recessed, defense counsel made an offer of proof on the record of Huffman's testimony about what he believed to be the effect of his medication. In this offer of proof, Huffman testified that the medication made him "calm" and "mellow[ed] [his] mood," but it did not affect him in any other way. No further evidence was offered, including the name or composition of the medication or expert testimony on the medication

6

or its effects. Having heard the proffered testimony, the court's ruling remained unchanged.

(Doc. 12-5 at 5-6.)

The Missouri Court of Appeals concluded that the trial court did not abuse its discretion in excluding the proffered testimony, because any probative value from Huffman's testimony was outweighed by the potential risk of confusing the issues and misleading the jury. *Id.* at 6. The Court first stated that whether Huffman was calm at trial had no bearing on his mental state at the time of the offense. *Id.* Second, the Court stated that the potential probative value of Huffman's proffered testimony was outweighed by the risks it presented of leading the jury to believe mental disease or defect was at issue or that the testimony was relevant to Huffman's mental state at the time of the offense. *Id.*

The Missouri Court of Appeals' determination was neither contrary to nor an unreasonable application of Supreme Court precedent. The Court reasonably concluded that the risk of confusing the jury by introducing Huffman's proffered testimony outweighed its limited probative value. When viewed in the context of the entire trial and the overwhelming evidence of Huffman's guilt – and indeed his admission that he committed the criminal conduct alleged – the omission of this testimony did not render Huffman's trial fundamentally unfair.

Thus, Ground One is denied.

### 2.  Grounds Two, Five, and Six

In his second ground for relief, Huffman argues that he received ineffective assistance of counsel during the sentencing phase of his trial when counsel failed to call witnesses on his behalf, "including but not limited to, Mr. Darrell Huffman, Ms. Linda Huffman, and Ms. Jada Huffman." (Doc. 1-1 at 23.)

To prevail on an ineffective assistance of counsel claim, the petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Strickland v. Washingto*n, 466 U.S. 668, 688 (1984). *Strickland* establishes a two-pronged test where a petitioner must show both that "his counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687. In order to show deficient performance, a petitioner must show that his counsel made errors so serious that he was not operating as the counsel guaranteed by the Sixth Amendment. *Id.* There is great deference given to counsel's performance and "petitioner bears a heavy burden to overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689. The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (*quoting Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Furthermore, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

Counsel's failure to call a witness is presumed to be a reasonable trial strategy. *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). Decisions regarding witness testimony are typically left to counsel's judgement and "will not be second guessed in hindsight." *Id.* Additionally, the presentation of evidence during the sentencing phase is a matter of counsel's professional judgement. *Antwine v. State*, 791 S.W.2d 403, 407 (Mo. banc 1990).

### a.  Darrell Huffman (Grounds Two and Five)

The first aspect of Ground Two concerns Huffman's brother, Darrell Huffman ("Darrell"). Huffman argues that Darrell's testimony would have established the reasoning behind his violent reaction—that Huffman's "childhood was troubled and he never learned how to respond to negative interactions effectively." (Doc 1-1 at 15.) Huffman contends that there is a reasonable probability that he would have received a lighter sentence had this testimony been heard. Huffman raises the same claim in Ground Five of his Petition.

At the evidentiary hearing held on Huffman's post-conviction motion, trial counsel testified that she did not call any witnesses during the penalty phase because it would not have affected the sentence as Huffman was convicted of first-degree murder, which carried a mandatory sentence of life without parole. (Doc. 12-7 at 26-27.) Trial counsel further testified that she did not call Darrell as a witness because he was in the custody of the Missouri Department of Corrections for homicide at the time. (Doc. 12-7 at 29.) Darrell also testified at the post-conviction hearing. He stated that Huffman would always "beat up on" younger cousins when he was a child and frequently got in trouble for fighting in school. *Id.* at 13, 15.

The Missouri Court of Appeals concluded that trial counsel's decision not to call Darrell was reasonable trial strategy. (Doc. 12-10 at 5.) The court reasoned:

> Counsel provided a reasonable explanation for not calling Darrell at
> sentencing, in that Darrell was in the custody of the Department of Corrections for

9

a homicide and "presenting that information to the jury was not going to create a sympathetic response from them[.]"  Therefore, the motion court did not clearly err in denying Movant's ineffective assistance of counsel claim for failing to call Darrell.

*Id.*

The decision of the Missouri Court of Appeals was not contrary to, or an unreasonable application of federal law.  The Court applied *Strickland* and determined counsel's decision not to call a witness who was in custody for a homicide constituted reasonable trial strategy.  Moreover, the testimony of Darrell would have revealed Huffman's violent history as a child. (Doc. 12 -7 at 12-13).  As such, the testimony could have been more harmful to Huffman's case than helpful.

Accordingly, this claim is denied.

### b.  Linda Huffman (Grounds Two and Six)

Huffman next claims that trial counsel was ineffective by failing to call Huffman's aunt, Linda Huffman ("Linda"), as a witness.  He contends that Linda's testimony would have demonstrated his troubled childhood, and that there was a reasonable probability that Huffman would have received a lighter sentence had this testimony been provided.  (Doc. 1-1 at 16.)  Huffman raises the same claim in Ground Six.

At the evidentiary hearing, Linda testified that Huffman and Darrell fought a lot as children.  (Doc. 12-7 at 5-6.)  She described one occasion where she stopped by the apartment to visit and had to break up a fight between Huffman and Darrell because they were "knocking each other out, hitting each other upside the head and banging each other against the walls."  *Id.* at 6. Defense counsel testified that she had spoken with Linda periodically throughout trial preparation and during the trial, and she found Linda's "statements and her demeanor to be something that would be more harmful for [Huffman] than helpful."  *Id.* at 29.  She explained

10

that Linda was "very angry with the process," and she was concerned as to how the jury would perceive this.  *Id.*

The motion court found that Linda's testimony would not have affected the sentence Huffman received in light of the "strong evidence of [Huffman's] guilt of a shocking and violent crime which the jury heard before sentencing."  (Doc. 12-6 at 5.)  The court additionally noted that the sentence imposed for the armed criminal action count was ordered to be served concurrently with the first-degree murder count.  *Id.*  The Missouri Court of Appeals, in turn, held that the motion court did not clearly err in denying Huffman's claim because he failed to establish the prejudice prong of the *Strickland* test.  (Doc. 12-10 at 6.)

The decision of the Missouri Court of Appeals was not contrary to, or an unreasonable application of federal law.  The Court reasonably applied *Strickland* and determined Huffman could not demonstrate prejudice due to counsel's decision not to call Linda.  Additionally, defense counsel testified that her decision not to call Linda was one of  trial strategy, as she did not believe Linda would be a favorable witness.

Accordingly, this claim is denied.

**(c)    Jada Huffman**

In the final part of Ground Two, Huffman argues that trial counsel was ineffective in failing to call his sister, Jada Huffman ("Jada"), at sentencing.  Huffman raised this claim in his post-conviction relief motion, but did not raise it in his appeal from the denial of post-conviction relief.

In Missouri, "a claim must be presented at each step of the judicial process in order to avoid default."  *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (citation modified).  Where a petitioner fails to appeal an ineffective-assistance-of-trial-counsel claim he raised in his

11

post-conviction motion, that claim is deemed defaulted. *See id.* And "[a] state prisoner who defaults on his federal claims in state court because of a state procedural rule is barred from federal habeas unless the prisoner can show cause and prejudice." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Here, Huffman failed to raise this claim in his post-conviction appeal and does not attempt to demonstrate cause for his procedural default.

Huffman's claim also fails on its merits.  Huffman did not elicit any testimony from trial counsel during the evidentiary hearing as to her decision not to call Jada.  For this reason, the motion court found that Huffman failed to overcome the presumption that trial counsel's decision not to call Jada was reasonable trial strategy.  (Doc. 12-6 at 5.)  Further, in light of the strong evidence of Huffman's guilt "of a shocking and violent crime which the jury heard before sentencing," Huffman cannot demonstrate prejudice due to counsel's decision not to call Jada. *Id.*

Accordingly, Ground Two is denied.

### 3. Ground Three

In Ground Three, Huffman argues that he received ineffective assistance of counsel when trial counsel did not object to leading questions by the prosecutor.  Huffman cites fifteen different pages of the trial transcript, but does not identify any of the challenged questions. (Doc. 1-1 at 28.)

Huffman raised this claim in his post-conviction motion, but did not raise it in his appeal from the denial of post-conviction relief.  He does not attempt to demonstrate cause for his procedural default.

Huffman's claim also fails on its merits.  The motion court noted that defense counsel testified that her decision not to object to leading questions was trial strategy, as the questions were establishing facts that the defense was not contesting and they did not hurt the defense's theory of the case.  (Doc. 12-6 at 6.)  The court therefore found that defense counsel's decisions were not unreasonable, and there was no reasonable probability that the jury's verdict would have been different if counsel had objected.  *Id.*  The motion court reasonably applied *Strickland*, and its decision is entitled to deference.

Thus, Ground Three is denied.

### 4.  Ground Four

In Ground Four, Huffman argues that he received ineffective assistance of counsel when counsel did not object to the prosecutor's questions regarding deliberation during voir dire. Specifically, he objects to the following statements of the prosecutor:

> Everybody lift up their left hand.  All right. Now, you guys made a deliberate decision to pick up your left hand.  You may have thought, "Why does he want us to do this?"  You can put them down now.  But I said, "Lift up your left hand," and you go, "Okay." (Indicating.)  60 seconds ago you weren't planning on doing that.  But you deliberately lifted it up after you thought about it, right?  Any amount of time.  It can be that brief.

(Doc. 12-1 at 36.)  Huffman contends that an objection to these statements would have been meritorious, as the prosecutor misstated the difference between premeditation and deliberation. Huffman repeats this claim in Ground Seven.

Huffman raised this claim in his post-conviction motion and in his appeal from the denial of post-conviction relief.  The motion court found that an objection would not have been meritorious.  (Doc. 12-6 at 6.)  The court additionally found that there is no reasonable probability that the jury would have returned a different verdict absent the allegedly erroneous hypothetical.  *Id.*  The Missouri Court of Appeals found that the prosector's hypothetical "did not

misstate the basic concept of deliberation." (Doc. 12-10 at 8.)  As such, the Court held that the motion court did not clearly err in finding that the objection would not have been meritorious. *Id.*  The Court further held that, even had the objection to the hypothetical been meritorious, Huffman did not show any resulting prejudice.  *Id.* at 8-9.

The Missouri Court of Appeals reasonably applied *Strickland* to the facts.  The Court found that the prosecutor did not misstate Missouri law regarding deliberation.  As such, an objection to the prosecutor's statements would not have been meritorious.  Defense counsel was not ineffective for failing to make a non-meritorious objection.

Thus, Grounds Four and Seven are denied.

### V.  Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. §2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999).  A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  In this case, Huffman has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

So ordered this 1st day of July, 2026.


 /s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

15